IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MEADOW M. WILLIAMS,<br><br>        Plaintiff,<br><br>  v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>        Defendant. | Case No. 4:22-cv-00006-JMK<br><br>**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court are the parties' *Cross-Motions for Summary Judgment*.[1] The motions are opposed.[2] Oral argument was not requested and is not deemed necessary. Both parties seek summary judgment on the issue of whether an automobile insurance policy issued to Plaintiff by Defendant Allstate Fire and Casualty Insurance Company ("Allstate") provides her with medical payment coverage for injuries she sustained in an accident in August 2020.[3] For the reasons described in this Order, the Court will grant Defendant's motion and deny Plaintiff's cross-motion.

---

[1] Docket 10 (Def.'s Mot. for Summ. J.); Docket 11 (Def.'s Supporting Mem.); Docket 13 (Pl.'s Mot. for Summ. J.); Docket 14 (Pl.'s Supporting Mem.).
[2] Dockets 15 & 17 (Pl.'s Opp'n and Def.'s Reply); Dockets 18 & 19 (Def.'s Opp'n and Pl.'s Reply).
[3] *See* Docket 11; Docket 14.

## I. BACKGROUND

### A. Factual Background

The material facts in this case are undisputed.[4] On August 20, 2020, Plaintiff Meadow Williams was a passenger on a motorcycle driven by her boyfriend in Fairbanks, Alaska.[5] As they crossed the intersection of Gaffney Road and Cushman Street, another driver ran a red light and crashed into them.[6] The other driver's car collided with the right side of the motorcycle, injuring Ms. Williams's right leg and knee.[7] The other driver's automobile insurer made a policy-limits payment of $100,000 to Ms. Williams in exchange for her full release of all non-indemnity claims against the driver.[8]

Ms. Williams also sought coverage under her family's automobile insurance policy through Defendant Allstate (the "Allstate Policy").[9] Besides liability coverage, the Allstate Policy provides $50,000 of uninsured or underinsured motorist ("UIM") coverage.[10] It also provides $100,000 of medical payments ("MedPay") coverage.[11] Its general statement of coverage for MedPay payments is as follows:[12]

---

[4] Docket 11 at 1–2; Docket 14 at 1–2.
[5] Docket 11 at 1; Docket 14 at 1.
[6] Docket 11 at 1–2; Docket 14 at 1.
[7] Docket 11 at 2; Docket 14 at 1–2.
[8] Docket 14 at 1–2.
[9] The Allstate Policy was held by Ms. Williams's father and provided coverage to residents of his household. The parties do not dispute that Ms. Williams, who was a minor residing with her father at the time of the accident, was a "resident relative" of her father and therefore could seek coverage under the Allstate Policy. *See, e.g.*, Docket 14 at 2; Docket 11 at 2 ("Williams was insured by [Allstate] under a policy issued to her father").
[10] Docker 14-1 at 4–6.
[11] *Id.* at 4–6.
[12] *Id.* at 17.

*Williams v. Allstate Fire & Cas. Ins. Co.*  Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment  Page 2
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 2 of 14

> **Part 2**
> **Automobile Medical Payments**
> **Coverage CC**
>
> **General Statement Of Coverage**
> If a premium is shown on the Policy Declarations for **Automobile Medical Payments**, **we** will pay to or on behalf of an **insured person** reasonable expenses actually incurred by the **insured person** for necessary medical treatment, medical services or medical products actually provided to the **insured person** by a state licensed health care provider. Ambulance, hospital, medical, surgical, X-ray, dental, orthopedic and prosthetic devices, professional nursing services, pharmaceuticals, eyeglasses, and hearing aids are covered. In addition, funeral expenses are covered if a **motor vehicle** accident results in death of an **insured person** and:
> 1. the Policy Declarations indicates **your** policy includes **Automobile Death Indemnity Insurance**, but no benefit is payable for death of that person under **Automobile Death Indemnity Insurance**; or
> 2. the Policy Declarations does not indicate **your** policy includes **Automobile Death Indemnity Insurance**.

For the purposes of MedPay coverage, the Allstate Policy defines "insured person(s)" as the policyholder and "any resident relative who sustains bodily injury while in, on, getting into or out of, or getting on or off of, an auto . . . ."[13] The Allstate Policy defines "auto" to mean "a private passenger land motor vehicle which has at least four wheels and is designed for use on public roads."[14] This definition of "auto" applies to all parts of the Allstate Policy unless otherwise noted.[15]

The Allstate Policy also contains several exclusions precluding MedPay coverage.[16] One such exclusion provides that the policy's MedPay coverage does not apply to bodily injury "to any person arising out of the ownership, maintenance, or use of a motor vehicle with less than four wheels" ("MedPay Exclusion #6").[17]

---

[13] *Id.* at 23.
[14] *Id.* at 11.
[15] *Id.*
[16] *Id.* at 17–18.
[17] *Id.* at 18.

*Williams v. Allstate Fire & Cas. Ins. Co.*  Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment  Page 3
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 3 of 14

After receiving the $100,000 liability policy-limits payment from the other driver, Ms. Williams submitted UIM and MedPay claims to Allstate under the Allstate Policy.[18] Allstate accepted Ms. Williams's UIM claim and paid the full $50,000 policy limit.[19] But Allstate denied Ms. Williams's MedPay claim, concluding that Ms. Williams's injuries arose out of the "use of a motor vehicle with less than four wheels" and therefore were excluded by MedPay Exclusion #6.[20]

B.  **Procedural History**

On January 10, 2022, Ms. Williams filed suit against Allstate in Alaska Superior Court.[21] Her Complaint alleges that Allstate committed breach of contract by denying her MedPay claim.[22] It also seeks a declaratory judgment that Allstate wrongfully applied MedPay Exclusion #6 and that Ms. Williams is entitled to MedPay coverage under the Allstate Policy.[23] Ms. Williams seeks compensatory damages for medical bills related to the accident.[24] Allstate removed the case to this Court on March 4, 2022.[25]

## II.  LEGAL STANDARD

This action arises under Alaska state law and invokes the Court's diversity-of-citizenship jurisdiction. As such, the Court will apply Alaska substantive law and

---

[18] Docket 11 at 2.
[19] *Id.*
[20] *Id.*; Docket 15 at 5.
[21] Docket 1-1.
[22] *Id.* at 6.
[23] *Id.*
[24] *Id.*
[25] Docket 1.

*Williams v. Allstate Fire & Cas. Ins. Co.*  Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment  Page 4
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 4 of 14

federal procedural law.[26]  Under Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] Summary judgment is appropriate here because there are no genuine issues of material fact relevant to the instant motion and the "meaning and interpretation of an insurance contract is a question of law . . . ."[28]

### III.  DISCUSSION

A.  **Alaska Insurance Contract Interpretation**

Under Alaska law, courts must construe insurance contracts according to the principle of "reasonable expectations."[29]  This principle requires insurance contracts to be construed "so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms."[30]  An insured's expectation of

---

[26] *See, e.g.*, *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("Under the rule of [*Erie*], 'federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'") (citation omitted) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).
[27] Fed. R. Civ. P. 56(a).
[28] *Tomlinson ex rel. Young v. Geico Gen. Ins. Co.*, 433 F. App'x 499, 501 (9th Cir. 2011); *see also Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004) ("Interpretation of a contract is ordinarily a question of law.").  The parties agree that the case is appropriate for summary judgment.  *See* Docket 11 at 2–3 ("In this case, no material facts are in dispute . . . . This case presents a question purely of law for which summary judgment is appropriate."); Docket 14 at 1 ("The facts of this case are undisputed.  We squarely face a single question of law.").
[29] *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294 (Alaska 1994) (quoting *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988)).
[30] *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020) (quoting *United States Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979)); *see also Bering Strait*, 873 P.2d at 1294 (defining the reasonable expectations principle as the concept that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations") (quoting *Lloyds*, 755 P.2d at 400).

*Williams v. Allstate Fire & Cas. Ins. Co.*                                                                    Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment                                                   Page 5
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 5 of 14

coverage must be "objectively reasonable."[31] The court need not find the policy ambiguous to construe it under the reasonable expectations doctrine.[32]

To determine the parties' reasonable expectations, Alaska law directs courts to "look[] to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[33] "[B]ecause of inequities in bargaining power, [Alaska law] construe[s] coverage broadly and exclusions narrowly, in favor of insureds."[34] Alaska law, however, will recognize a coverage restriction "if . . . plain language limits the coverage of [the] policy."[35] Insurance policy language is construed "in accordance with ordinary and customary usage."[36]

**B.     The Parties' Arguments**

Both parties agree that the disposition of this case turns solely on the interpretation of the Allstate Policy's MedPay provisions.[37] Allstate asserts that MedPay Exclusion #6 unambiguously excludes coverage for Ms. Williams's injuries because they "[arose] out of the . . . use of a motor vehicle with less than four wheels."[38] Allstate notes that Ms. Williams was riding a motorcycle at the time of the accident, observing that the

---

[31] *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000) (quoting *Lloyds*, 755 P.2d at 400); *see also State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1047 (Alaska 1996) ("[S]ince most insureds develop an expectation that every loss will be covered, the reasonable expectation doctrine 'must be limited by something more than the fervent hope usually engendered by loss.'") (quoting *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 826–27 (Ariz. Ct. App. 1990)).
[32] *West*, 8 P.3d at 1138.
[33] *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).
[34] *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2015) (first alteration in original) (quoting *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008)).
[35] *Whittier Props.*, 185 P.3d at 88.
[36] *Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 139 (Alaska 2007).
[37] *See* Docket 11 at 2–3; Docket 14 at 1.
[38] Docket 11 at 5–6.

*Williams v. Allstate Fire & Cas. Ins. Co.*                                                        Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment                                           Page 6
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 6 of 14

motorcycle indisputably had fewer than four wheels.[39] It cites to decisions from various jurisdictions, including Alaska, that suggest that the phrase "arising out of the use of" in an automobile insurance policy broadly encompasses any occurrences that have at least some causal connection to the vehicle in question.[40] Allstate also asserts that the MedPay policy does not provide coverage because Ms. Williams did not suffer her injuries while on an "auto," observing that the liability, MedPay, and vehicle portions of the policy all define an "auto" as "a private passenger land motor vehicle which has at least four wheels."[41] Allstate concludes that Ms. Williams cannot reasonably have expected the policy to provide MedPay coverage for her injuries.[42]

Ms. Williams opposes Allstate's motion and cross-moves for summary judgment in her favor.[43] Ms. Williams asserts that the "sole issue" on summary judgment is the applicability of MedPay Exclusion #6 because (1) the term of "auto" does not appear in the Allstate Policy's general statement of coverage for MedPay, and (2) Allstate waived the argument that the Allstate Policy's definition of "auto" precludes coverage by not including the definition of "auto" as a rationale for denying coverage in its August 31, 2021, MedPay Coverage Declination Letter.[44] Further, noting that Alaska law requires the Court to interpret policy exclusions narrowly in her favor, Ms. Williams maintains that MedPay Exclusion #6 does not bar MedPay coverage for her injuries because the fact that

---

[39] *Id.*
[40] *Id.* at 6–10.
[41] *Id.* at 7.
[42] *Id.* at 5–11.
[43] Docket 14; Docket 15.
[44] Docket 15 at 2–6; Docket 15-1.

*Williams v. Allstate Fire & Cas. Ins. Co.*      Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment      Page 7

Case 4:22-cv-00006-JMK    Document 22    Filed 12/13/22    Page 7 of 14

she was riding a motorcycle had no "casual connection" to her injuries.⁴⁵ Williams asserts the other driver would have hit her regardless of whether she had been on the motorcycle or a four-wheeled vehicle.⁴⁶ She therefore concludes that her injuries "arose out of" the other driver's use of his car, not her use of the motorcycle.⁴⁷ Ms. Williams moves for a summary judgment ruling that Allstate breached the Allstate Policy by declining her MedPay claim and that MedPay Exclusion #6 does not preclude MedPay coverage for her injuries.⁴⁸

C.   Analysis

After examining the language of MedPay Exclusion #6, other relevant provisions of the Allstate Policy, and case law interpreting similar contractual language, the Court finds that, under MedPay Exclusion #6, Ms. Williams could not reasonably have expected her policy to provide MedPay coverage for her injuries.⁴⁹ MedPay Exclusion #6

---

⁴⁵ Docket 14 at 8–10.
⁴⁶ *Id.* at 9.
⁴⁷ *Id.* at 10.
⁴⁸ *Id.* at 9–10; Docket 15 at 6–10. Ms. Williams does not assert ambiguity in any of the Allstate Policy's provisions. *See* Docket 15 at 6–10.
⁴⁹ In addition to the Allstate Policy and the Coverage Declination Letter, Ms. Williams submitted three nearly identical affidavits, all asserting that the "MVA did not 'arise out of the ownership, maintenance, or use of a motor vehicle with less than four wheels.' Rather this MVA 100% arose out of Mr. Sampson's misuse of a 4-wheel Subaru sedan." *See* Docket 14-3; Docket 14-4; Docket 14-5. Ms. Williams also submitted a letter from the driver's insurer, which stated that the driver "was at fault" for the accident. Docket 14-6. This extrinsic evidence restates the undisputed facts but does not support the contention that Ms. Williams had an objectively reasonable expectation of coverage under the Allstate Policy. *See United Servs. Auto. Ass'n v. Neary,* 307 P.3d 907, 912 (Alaska 2013) ("We have looked in the past to such evidence as statements by the insurer's sales representatives and the insurer's printed flyers or brochures for an indication of the reasonable expectations of the insured seeking coverage."); *Whittier Props.,* 185 P.3d at 92 (concluding that the reasonable expectations doctrine did not assist Plaintiffs where extrinsic evidence did not suggest that the parties reasonably believed that damages stemming from leaked gasoline would be covered under the relevant insurance policies). Similarly, Allstate

*Williams v. Allstate Fire & Cas. Ins. Co.*                                                                                      Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment                                                    Page 8

Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 8 of 14

precludes MedPay coverage for bodily injury "arising out of the ownership, maintenance, or use of a motor vehicle with less than four wheels."[50] The Alaska Supreme Court has interpreted the phrase "bodily injury . . . arising out of the use of" a vehicle in an auto insurance policy to mean that "there must be some causal connection between the 'use' of the vehicle and the injury."[51] According to the Alaska Supreme Court, determining whether a bodily injury arose out of the use of a vehicle involves a fact-specific analysis that turns on the following three factors:

> (1) The extent of causation between the [vehicle] and the injury;
>
> (2) Whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted; and
>
> (3) What type of "use" of the [vehicle] was involved.[52]

Under these three factors, Ms. Williams's bodily injuries arose out of the use of her boyfriend's motorcycle. First, the motorcycle had a direct causal connection with Ms. Williams's injuries because it was an "active accessory" to them.[53] Unlike other cases in which no causal connection existed because the bodily injury resulted from a post-

---

presents arguments relating to the rate of motorcycle accidents as extrinsic evidence but does not suggest that Ms. Williams was aware of this increased risk when forming her expectations regarding coverage. Docket 15 at 10–11. As such, neither party's extrinsic evidence is helpful to the Court's reasonable expectation analysis.
[50] Docket 14-1 at 18.
[51] *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 609 (Alaska 2011) (quoting *Shaw v. State Farm Mut. Auto Ins. Co.*, 19 P.3d 588, 591 (Alaska 2001)).
[52] *Id.* (quoting *Shaw*, 19 P.3d at 592).
[53] *See id.* (explaining that "the vehicle must be an 'active accessory' for there to be an adequate causal relationship") (quoting *Shaw*, 19 P.3d at 592 n.28).

*Williams v. Allstate Fire & Cas. Ins. Co.*  Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment  Page 9
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 9 of 14

vehicle-crash fight, not the crash itself,[54] in the present case Ms. Williams was actively riding on the motorcycle when the other driver's car struck and injured her leg.

Next, no "act of independent significance" broke the causal link between Ms. Williams's riding of the motorcycle and her injuries. Another driver's intentional act is not automatically an act of independent significance.[55] An act has independent significance and breaks the causal chain when, for example, a tortfeasor leaves or exits his vehicle before he injures an insured.[56] Had Ms. Williams dismounted the motorcycle before the other driver struck her, such an act might have broken the causal chain between her use of the motorcycle and her injuries.

Lastly, by riding the motorcycle, Ms. Williams was "using" it in a manner relating to "its inherent status as a vehicle."[57] The ordinary meaning of the word "use" is "to put into action or service, avail oneself of, employ."[58] Under this ordinary meaning, Ms. Williams was plainly "using" her boyfriend's motorcycle when she was injured by riding it as a means of transportation. Unlike other cases in which a vehicle was not used in its "inherent status as a vehicle" because it was, for example, used as a gun rest from

---

[54] *See id.* ("[T]he vehicle driven by [the tortfeasor] was not an 'active accessory' to [the insured]'s injuries. The collision between [the tortfeasor]'s and [the insured]'s vehicles was only the subject of their fight; the vehicles played no part in the fight itself. Accordingly, there was insufficient causation for [the insured]'s death to have arisen out of the 'use' of the vehicle [the tortfeasor] was driving.").
[55] *Id.* (quoting *Shaw*, 19 P.3d at 593).
[56] *See id.* at 609–10.
[57] *See Shaw*, 19 P.3d at 591–92 (explaining that the Alaska Supreme Court approves of "those 'more recent cases' which 'refuse[d] to interpret "use" as meaning other than the use of the vehicle in its inherent status as a vehicle.'") (alteration in original) (quoting *Criterion Ins. Co. v. Velthouse*, 751 P.2d 1, 4 (Alaska 1986)).
[58] *Use (v.)*, Merriam-Webster Online Dictionary (2022), *available at* https://www.merriam-webster.com/dictionary/use.

*Williams v. Allstate Fire & Cas. Ins. Co.*     Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment     Page 10
Case 4:22-cv-00006-JMK    Document 22    Filed 12/13/22    Page 10 of 14

which a tortfeasor shot an insured, Ms. Williams was riding her boyfriend's motorcycle as a passenger when she was injured.[59] In *Criterion Insurance Company v. Velthouse*, the Alaska Supreme Court concluded that "[b]ecause the accident could just as easily have occurred in a field or in the home as in [the insured's] parked truck . . . it had no connection with the 'use' of [the insured's] vehicle as a matter of law."[60] Here, Ms. Williams's injuries could not have occurred in a field or in the home—her leg was injured precisely because she was a passenger on a motorcycle when it was struck by another car.

Together, these three factors confirm that the bodily injuries Ms. Williams suffered to her right leg and knee arose out of her use of a motorcycle. Because it is undisputed that the motorcycle had fewer than four wheels, MedPay Exclusion #6 excludes MedPay coverage for her bodily injuries.[61] It would have been objectively unreasonable for Ms. Williams to expect otherwise.

Other provisions of the Allstate Policy support this conclusion. Ms. Williams's policy provides MedPay coverage for reasonable expenses incurred by an "insured person" for medical services.[62] An "insured person" is defined as the policy-holder or a resident relative who sustains a bodily injury "while in, on, getting into or out

---

[59] *See Criterion Ins. Co. v. Velthouse,* 751 P.2d 1, 3 (Alaska 1986) (collecting cases).
[60] *See Shaw*, 19 P.3d at 592 (citing *Velthouse*, 751 P.2d at 5).
[61] Other jurisdictions have interpreted "less-than-four-wheel" exclusions similarly. *See, e.g.*, *Mid-Century Ins. Co. v. Henault*, 879 P.2d 994, 999 (Wash. Ct. App. 1994) ("When [the insured] was injured, she had been riding her motorcycle, which had, of course, less than four wheels. . . . Because the injuries that [she] sustained as a result of being thrown from her motorcycle were causally connected to her use of her motorcycle, the exclusion in the PIP portion of [her] policy precludes her from receiving PIP coverage."), *aff'd*, 905 P.2d 379 (Wash. 1995).
[62] Docket 14-1 at 17.

*Williams v. Allstate Fire & Cas. Ins. Co.*  Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment  Page 11
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 11 of 14

of, or getting on or off of, an auto . . . ."⁶³ The Allstate Policy consistently defines "auto" to mean "a private passenger land motor vehicle which has at least four wheels and is designed for use on public roads."⁶⁴ As described above, it is undisputed that Ms. Williams suffered her bodily injuries while on her boyfriend's motorcycle, which does not have "at least four wheels."⁶⁵ Ms. Williams's assertions that Allstate has waived arguments relating to the Allstate Policy's definition of "insured person" and "auto" or that these definitions are "irrelevant" to MedPay coverage are unavailing. Allstate acknowledges that the "issue here is the interpretation of [MedPay] Exclusion #6."⁶⁶ The Allstate Policy's definitions of "insured person" and "auto" undermine any argument that Ms. Williams reasonably could have expected the Allstate Policy to provide MedPay coverage for her injuries.

Citing *Devine v. Great Divide Insurance Co.*,⁶⁷ Ms. Williams argues that "Alaskan courts look to Worker's Compensation law" when giving meaning to the phrase "arising out of."⁶⁸ Ms. Williams also points to a Supreme Court of Kansas case which interprets the phrase arising "out of" and "in the course of" of employment in the Kansas workmen's compensation act.⁶⁹ But these cases do not support the proposition that the phrase "arising out of the scope of employment" and "arising out of the . . . use of a motor vehicle" have the same meaning. The *Devine* court was interpreting a contract's definition

---

⁶³ *Id.*
⁶⁴ *Id.* at 11 (noting that this definition "appl[ies] to all part of the policy except where otherwise noted").
⁶⁵ Docket 11 at 1; Docket 14 at 1.
⁶⁶ Docket 17 at 3–4.
⁶⁷ 350 P.3d 782 (Alaska 2015).
⁶⁸ Docket 14 at 6–7.
⁶⁹ *Newman v. Bennett*, 512 P.2d 497, 501 (Kan. 1973)

*Williams v. Allstate Fire & Cas. Ins. Co.*     Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment     Page 12
Case 4:22-cv-00006-JMK    Document 22    Filed 12/13/22    Page 12 of 14

of employer liability, which was limited to situations involving bodily injury to an employee "arising out of and in the course of . . . employment."[70]  In that case, the Alaska Supreme Court held that the phrase "arising out of and in the course of employment" had the same meaning in a commercial general liability policy as it has in worker's compensation law because "[t]he intent of the employment exclusion in a commercial general liability policy appears to be to avoid duplication of coverage provided under Workers' Compensation and Employers Liability policies."[71]  No similar concern regarding duplication of coverage exists here because Ms. Williams's injuries are wholly unconnected to her employment.  Similarly, Ms. Williams's analogy to the statutory language analyzed *Newman* is inapposite because Ms. Williams is not seeking worker's compensation.

For these reasons, the Court concludes that, under the language of the MedPay Exclusion #6, it would have been objectively unreasonable for Ms. Williams to expect the Allstate Policy to provide MedPay coverage for the injuries she suffered while riding the motorcycle.  Allstate is therefore entitled to judgment as a matter of law on Ms. Williams's breach of contract and declaratory judgment claims.  Accordingly, because both parties have agreed that all material facts are undisputed, the Court will grant Allstate's summary judgment motion and deny Ms. Williams's cross-motion.

---

[70] *Devine*, 350 P.3d at 790.
[71] *Id.* (quoting 21 Eric Mills Holmes, *Holmes' Appleman on Insurance* § 132.5[C][1], at 66–67 (2d ed. 1996)).

*Williams v. Allstate Fire & Cas. Ins. Co.*  Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment  Page 13
Case 4:22-cv-00006-JMK   Document 22   Filed 12/13/22   Page 13 of 14

## IV. CONCLUSION

For the reasons described in this opinion, the Court concludes that Ms. Williams could not have had an objectively reasonable expectation that her Allstate automobile insurance policy would provide MedPay coverage for the bodily injuries she sustained while riding her boyfriend's motorcycle.

Accordingly, Allstate's *Motion for Summary Judgment* at Docket 10 is GRANTED, and Ms. Williams's *Cross-Motion for Summary Judgment* at Docket 13 is DENIED. The Clerk of Court is directed to enter a final judgment accordingly.

IT IS SO ORDERED this 12th day of December, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Williams v. Allstate Fire & Cas. Ins. Co.* Case No. 4:22-cv-00006-JMK
Opinion and Order re: Cross-Motions for Summary Judgment Page 14
Case 4:22-cv-00006-JMK Document 22 Filed 12/13/22 Page 14 of 14